UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

---------------------------------------------------------X
NEIL PACE,

                Plaintiff,                      CIVIL ACTION
                                                    NO. 3:01CV01707 (JCH)

VS.

NATIONAL RAILROAD PASSENGER
CORPORATION,

                Defendant.                    October 22, 2003
---------------------------------------------------------X

**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR NEW TRIAL
<u>PURSUANT TO FED. R. CIV. P. 59</u>**

**<u>PRELIMINARY STATEMENT</u>**

      Defendant NATIONAL RAILROAD PASSENGER CORPORATION ("Amtrak" or "defendant") respectfully submits this memorandum of law in reply to plaintiff's opposition to Amtrak's motion for a new trial on all issues and/or a remittitur.

      Plaintiff's opposition to defendant's motion for new trial fails to dispute the defendant's cited references to the record which justify the granting of a new trial, and similarly fails to cite any legal authority refuting defendant's arguments.

      Accordingly, defendant's motion should be granted.

**<u>LEGAL STANDARD</u>**

      Plaintiff argues that there is a relaxed standard of negligence for FELA cases and, therefore, there is a "judicial bias favoring jury determination" of the issues. (Plaintiff's Memorandum of Law

at p.3).¹ The Supreme Court, however, has reiterated that under the FELA, a railroad owes a common law duty of ordinary care to its employees, nothing more. <u>Consolidated Rail Corp. v. Gottshall</u>, 512 U.S. 532, 543 (1994). [T]he FELA "'does <u>not</u> make the employer the insurer of the safety of his employees while they are on duty. The basis of [the employer's] liability is [its] <u>negligence</u>, not the fact the injuries occur.'" <u>Gottshall</u>, 512 U.S. at 543 (citations omitted)(emphasis added). Although the FELA relaxes the common law standard for the causation element by imposing liability for injuries caused "in whole or in part" by the railroad employer's negligence, 45 U.S.C. § 51; <u>Rogers v. Missouri Pacific Railroad Co.</u>, 352 U.S. 500, 507 (1957); <u>Gottshall</u>, 512 U.S. at 543; this statutory modification does not alter the traditional common law principles applicable to determining whether the defendant is negligent. In <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331, 335 (5th Cir. 1997), the Fifth Circuit, <u>en</u> <u>banc</u>, stated that the FELA does <u>not</u> create a heightened duty of care for the railroad employer:

> The ["in whole or in part"] phrase [in FELA § 51] does <u>not</u> also modify the word 'negligence.' The duty of care owed, therefore, under normal rules of statutory construction, <u>retains the usual and familiar definition of ordinary prudence</u>.²

In short, the FELA should <u>not</u> be read to mean that a railroad is liable for only "slight negligence" or based on only "slight evidence of negligence." To impose FELA liability under such a diluted standard misreads controlling Supreme Court precedents.³

---

¹ Citations to plaintiff's Memorandum of Law in opposition shall hereinafter be abbreviated as "Pl. Mem. at p.___."

² The claims in <u>Gautreaux</u> arose under the Jones Act rather than the FELA, but it is well settled that case law interpreting the Jones Act applies with equal force to the federal court's interpretation of the FELA. <u>See</u>, <u>e.g.</u>, <u>Lies v. Farrell Lines, Inc.</u>, 641 F.2d 765, 770-771 (9th Cir. 1981); <u>Cox v. Dravo Corp.</u>, 517 F.2d 620, 622-23 (3d Cir. 1975).

³ <u>See</u> <u>Tiller v. Atlantic Coast Line R. Co.</u>, 318 U.S. 54, 67 (1943) ("the employer's liability is to be determined under the general [common law] rule which defines negligence as the

**ARGUMENT**

    A.    **Evidence of Pre-Litigation Advancements**

Plaintiff argues that Amtrak is somehow precluded from arguing that it was prejudiced by the admission into evidence of pre-litigation advancements made to plaintiff because there was not a formal objection made during trial. (Pl. Mem. at p. 5). During pre-trial conferencing on July 8, however, after much argument by both parties, the Court ruled that evidence of advancements made to plaintiff were inadmissible because of the obvious prejudicial impact, and that the evidence may only be admitted if the issue was raised during cross-examination of the plaintiff. (Giannetta Aff., Exh. H at p.26:16 - p.34:6; p.34:4-23) (ordering "there shouldn't be any reference to these payments"). It is undisputed, therefore, that the pre-trial order was violated the moment that plaintiff opened the door during direct examination as to whether he was receiving advancements. (Giannetta Aff., Exh. F at p. 80:12-14).

Plaintiff does not dispute that evidence of the advancements were prejudicial but rather argues that any potential prejudice was removed when Amtrak's attorney asked Claim Agent Tychi whether payment of advancements is equated with concession of liability. (Pl. Mem. at p. 5). Certainly, the clear prejudicial effect of the jury hearing that Amtrak paid plaintiff approximately $127,000 before litigation was even instituted could never be undone. Amtrak was painted into a corner and tried to control the damage the best and only way it could – by having its claim agent explain to the jury that Amtrak did not admit liability by paying

---

lack of care under the circumstances . . ."); Fashauer v. New Jersey Transit Rail Operations, Inc., 57 F.3d 1269, 1283 (3d Cir. 1995) (the negligence standard under the FELA is a duty of ordinary care for both the employee and the employer); Page v. St. Louis Southwestern Ry. Co., 349 F.2d 820, 823 (5th Cir. 1965) ("So far as negligence is concerned, [the FELA] standard is the same -- ordinary prudence -- for both Employee and Railroad alike.").

advancements.

Plaintiff further argues that Amtrak alleged he was a malingerer during the time period that he was receiving advancements and, therefore, he ought to have had the right to inform the jury that he was receiving advancements to demonstrate that he was not a malingerer. (Pl. Mem. at p. 5). Notwithstanding that such an argument does not justify showing the jury the enormous total dollar amount paid in advancements – approximately $127,000 – it is also based on a false premise since Amtrak never argued to the jury that plaintiff was physically capable of returning to his craft during the time period that he received advancements. Moreover, as Amtrak stated during pre-trial conferencing that it would not "claim mitigation prior to the end of paying him those advancements," (Exh. H at p. 29:6-7), plaintiff was on notice that such an argument was never going to made at trial. Plaintiff's misplaced reliance on testimony by a non-medical witness, Tim Tychi, to support this argument is telling. Indeed, the closing arguments of Amtrak's attorney do not even make such an allegation.

Plaintiff similarly argues that evidence of the advancements were necessary to prove his claim for spoliation. (Pl. Mem. at p. 5). However, as a matter of law, evidence of advancements for purposes of the Court's decision on the spoliation issue, need not have reached the jury since "the issue of whether evidence was destroyed with a 'culpable state of mind' is one for the court to decide in determining whether the imposition of sanctions is warranted. . . ." Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 109 n.4 (2d Cir. 2002).

Accordingly, the evidence of advancements was improperly introduced at trial by plaintiff which resulted in clear and unfair prejudice to the defendant.

### B. The May 18, 2001 Report of Dr. Kramer

Plaintiff argues, without citation to any legal authority, that the Kramer Report was

admissible on its face without the need to demonstrate any of the prerequisite criteria of admissibility under Federal Rules of Evidence 803(6); (Pl. Mem. at p. 7); which is an incorrect statement of the law.  See 5 Weinstein's Federal Evidence § 803.08[2] at p. 803-56 (Matthew Bender 2d ed. 2003) (the proponent of a purported business record must lay a foundation "either by the testimony of a qualified witness or by a valid certification," establishing that the document satisfies the requisite characteristics under Rule 803(6)) ;Raphaely Int'l Inc. v. Waterman S.S. Corp., 972 F.2d 498, 502-03 (2d Cir. 1992) (admissibility as business record contingent on testimonial foundation by person with knowledge of contents and preparation of documents).

    Plaintiff makes a tenuous and creative argument that a May 7, 2001 letter from Claim Agent Tychi to Dr. Kramer which requested an examination of the plaintiff establishes that the Kramer Report "falls squarely within the exception to the hearsay rule." (Pl. Mem. at p. 8).  It is difficult to conceive, however, that a claim agent's letter somehow validates the addressee's ultimate medical report as a business record.  Aside from the obvious multiple layers of hearsay, there is nothing contained in either Mr. Tychi's letter or the Kramer Report itself that satisfies the FRE 803(6) criteria.

    Plaintiff also argues that Amtrak waived its right to object to the Kramer Report because it had originally listed it as an exhibit in the joint trial memorandum and did not formally object to plaintiff's designation of it on the exhibit list.  (Pl. Mem. at p. 9).  It is submitted that despite lack of a formal written objection, Amtrak clearly communicated its objection to the Kramer Report during pre-trial conferencing and, therefore, plaintiff did not suffer any prejudice.  Amtrak's attorney stated: "May I just say, your Honor, although I did not put objections, I was going to raise today that I do have some objections to all of the doctors' reports that are listed by plaintiff." (Exh. H, at p.15:4-7).

Plaintiff also claims that Amtrak's "substantial rights" were not adversely affected by admission of the Kramer Report because Dr. Kramer's opinion concurred with that of Dr. Druckemiller, plaintiff's treating physician. (Pl. Mem. at p. 10). Clearly, Amtrak had a substantial right to a fair trial without having the jury consider evidence that plaintiff never properly qualified under the Federal Rules of Evidence. Moreover, admission of Dr. Kramer's report only served to duplicate and further reinforce Dr. Druckemiller's opinion which defendant vigorously disputed. While defendant was able to cross-examine Dr. Druckemiller, it had no such opportunity with Dr. Kramer.

Accordingly, the plaintiff failed to properly qualify the Kramer Report as a business record, and it was an error of law and prejudicial to defendant for it to be admitted as evidence.

### C. Future Wage Loss Damages

Plaintiff argues that the jury was presented with enough evidence to reasonably award him $1,130,725 for future wage loss. (Pl. Mem. at p.11). A trial judge hearing a motion for new trial under Rule 59 is free to weigh the evidence and need not view it in the light most favorable to the verdict winner. Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992).

Plaintiff fails to refute the clear mistake that the jury made in assuming that plaintiff would never gain comparable employment with Amtrak in the future which is contrary to all of the evidence. The evidence showed that plaintiff continues to apply for jobs with Amtrak, and was in fact offered the comparable-paying position of block operator at $22 per hour for which he was qualified. (Giannetta Aff., Exh. F at 132:7-9). Indeed, on July 31, 2003 plaintiff sent five written job transfer requests to Amtrak's Human Resources office confirming that he is currently willing and able to work with accommodations as an assistant conductor, a conductor, an engineer, a ticket clerk and block operator for Amtrak. (Giannetta Aff., Exh. J). The jury's

mistaken belief that plaintiff would remain a Macy's store detective earning $10 per hour for the rest of his life and never return to Amtrak is, therefore, simply contrary to the great weight of evidence and resulted in a grossly excessive future damages award. While a new trial should be ordered, defendant alternatively requests a substantial reduction of the $1,130,725 award by way of remittitur.

### D. Future Non-Economic Damages

Plaintiff argues that there was ample evidence for the jury to reasonably conclude that plaintiff will continue to endure pain, suffering, mental aguish and loss of enjoyment of life's activities (hereinafter "non-economic damages") in the future. (Pl. Mem. at p. 15). The evidence is unequivocal that plaintiff's non-economic losses were greatly alleviated by the surgery and, if anything, his condition has improved since the surgery. Plaintiff does not refute defendant's argument that, based on the evidence, the jury's award is clearly excessive when compared to damages awarded for past non-economic damages. A proration of the $75,000 award for past non-economic damages over four years compared to the $1.2 million award for future non-economic damages reveals a grossly disproportionate award not supported by the evidence.[4]

Plaintiff argues that comparison to Nairn v. National Railroad Passenger Corp., 837 F.2d 565 (2d Cir. 1988) is inapposite since the plaintiff in Nairn did not undergo surgery. (Pl. Mem. at p. 16). However, the plaintiff in Nairn, like Mr. Pace, suffered a 15% permanent impairment of back function. The plaintiff in Nairn also had a decrease in signal space and disc degeneration

---

[4] If the jury accepted the life expectancy statistic given by the court in its charge, based on the yearly figure of $18,750 per year for 40 years, the rationally maximum future award is $750,000, significantly below the $1.2 million award.

that was incurable. Id., at 567. Accordingly, the Nairn case provides a meaningful comparison that is not deemed inapposite merely because the plaintiff elected not to undergo surgery. Plaintiff predictably cites to Frazier v. Norfolk & Western Railway Co., 996 F.2d 922 (7th Cir. 1993) (Pl. Mem. at p. 13), which defendant distinguished in its moving papers.

Plaintiff also relies on Schneider v. National R.R. Passenger Corp., 987 F.2d 132, 137-38 (2d. Cir. 1993), erroneously averring that there was an award of $1.25 million for intangible damages when in fact the amount awarded was $1 million. (Pl. Mem. at p. 13); Schneider, 987 F.2d at 137. Not only is there no breakdown in Schneider as to how much of the $1 million was apportioned for past and future "intangible" damages, the plaintiff in that case, a victim of a brutal attack, suffered significantly drastic injuries including post-traumatic stress disorder, recurring flashbacks, organic brain syndrome, vision impairment and inability hold down a full time job. Schneider, 987 F.2d at 137.

Accordingly, the jury's award for future non-economic damages is not only grossly excessive, but also grossly disproportionate to its award for plaintiff's past pain and suffering. Defendant should be granted a new trial. In the alternative, the jury's award of $1.2 million for future pain and suffering should be substantially reduced by way of remittitur because no evidence has been presented in this case to justify the jury's award.

E.      **Charge of Spoliation**

Plaintiff's argument in opposition myopically focuses on the undisputed facts that Amtrak destroyed certain inspection and maintenance records long before litigation was commenced, (Pl. Mem. at 18-24), which was done, as the court found, pursuant to routine business practice. Plaintiff cites Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 107 (2d Cir. 2002) as the guiding legal standard for the Second Circuit without acknowledging the significant

differences of its factual and procedural posture to the instant matter. (Pl. Mem. at p. 17). Quoting an isolated quote from the case, plaintiff conclusively states that Residential Funding's relaxed standard is applicable to the case at bar. Id.

Respectfully, defendant submits that the Second Circuit instructs that a finding of "intentional" or "bad faith" destruction of evidence is necessary to warrant an adverse inference where the alleged spoliation occurred in the context of pre-litigation destruction of evidence. Accordingly, as a matter of law, a spoliation charge should never been issued to the jury and resulted in unfair prejudice to the defendant.

## CONCLUSION

Based upon the foregoing, defendant respectfully requests a new trial on all issues, or alternatively, remittitur of the awards for future pain and suffering and future wage loss.

Respectfully submitted,

FOR THE DEFENDANT

By: _____
Cathleen Giannetta (ct12052)
Brian M. Molinari (ct21294)
LANDMAN CORSI BALLAINE & FORD, P.C.
Offices of Amtrak
50 Union Avenue - 4th Floor West
New Haven, Connecticut 06519
120 Broadway-27th Floor
New York, New York 10271
(212) 238-4800

## **CERTIFICATION**

  I hereby certify that a copy of the foregoing Reply Memorandum of Law was sent by regular first class mail on October 22, 2003 to:

>Scott E. Perry, Esq.
>Cahill & Goetsch P.C.
>43 Trumbull Street
>New Haven, CT 06511

                       _____
                       Cathleen Giannetta
                       (ct12052)